Good morning. Good morning, Your Honors. Carmen Smarandoglio, on behalf of Appellant Marcel King, I would like to reserve two minutes. Okay. But his supervised release revocation hearing, Mr. King had certain minimum due process protections, including the right to be present and the right to confront in a face-to-face manner his accuser, apart and distinct. So where does the second come from? The confrontation clause as such doesn't apply, is that right? Excuse me, Your Honor? The confrontation clause as such does not apply, is that right? That's correct, Your Honor. Okay. So from whence are you getting – I understand that some form of appearance or presence is assumed as a matter of due process, but the face-to-face part, where is that coming from? The Supreme Court's Morrissey decision itself mentions both the right to confront and the right to cross-examine except, obviously, upon a showing of good cause. But the question is, what does confront mean? Well, if anything, confront means what it has always meant, that it means face-to-face confrontation. And although we don't have any case law in the due process clause so saying, it is what the Supreme Court said in Coyvill, Iowa, what Justice Scalia reaffirmed in his dissent in Maryland v. Craig, the face-to-face aspect, the face-to-face confrontation aspect of the right to confrontation has never been debated. I will say that all it was debated, it was its significance. And I acknowledge that in Maryland v. Craig, the Supreme Court has retreated a bit from the position it has taken in Coyvill, Iowa. But I will say it has never, ever abandoned this fundamental division or fundamental aspect that the right to confrontation has two distinct aspects. And one is the right to face-to-face confrontation, and one is the right to cross-examine the right to cross-examination. But you're effectively conceding there's no authority for the right to confront requiring being present every single moment of the confrontation in the revocation context. I apologize if that's what I said, Your Honor. No. I'm saying that Morisse itself recognizes that a defendant in a supervised rev – obviously, that was a parole revocation case. But in a revocation proceeding, has the constitutional right, the due process constitutional right to confront in a face-to-face manner the witnesses against him, unless that right is a bridge upon showing a good example. And so what – Judge Alsop here seems to have somewhat bent over backwards to come to a resolution of the competing interests here. And for what part of the time of the testimony was the victim not in the presence of the defendant, a very small – 10 percent of the time or something like that? It is true that he was outside of the courtroom and also obviously outside the presence of the accuser for about 10 to 15 percent of her testimony. However, that was the critical portion of her testimony. It was the portion where she actually described their alleged sexual encounter. That was at the heart – that testimony was at the heart of the district court's finding of a violation on Charge 4, the sedentary rape one. Nothing else actually supported that finding. And when she was out, was there a TV, was there a video connection? Yes, Your Honor. The court used a two-way closed circuit television system. So, yes, everybody could see everybody through videos. Well, I mean, has technology somewhat overtaken the issue here? If you can see somebody directly while they're talking on television, the difference is kind of small. It might be small, Your Honor, but courts throughout the country, for example, the Eighth Circuit in the United States, the Bordeaux decision that we have cited in our reply, of course still recognize that there are certain intangible benefits to actually being in somebody's presence. That unmediated gaze across the courtroom has no equivalent, you know, in this electronic, in this remote mode of communication. The Eighth Circuit and then the Eleventh Circuit later in the United States have both refused to equivalent the face-to-face confrontation with this remote confrontation. But let's say we accept that for the sake of argument. But what exactly did the victim say when she was not face-to-face, as you're defining it, with King that was material, that the court relied on? The information that she was underage and they had sex came out while he was present. No? That information certainly came out. However, that somebody has sex is a vector unless detailed, unless clarified through follow-up testimony. We cannot know whether sex actually meets the statutory elements. In this case, it needs to be unlawful sexual intercourse. So what specifically did the court rely on that she said when they weren't face-to-face? When they were not face-to-face, she described exactly what happened. She described the alleged sexual intercourse as opposed to just sex. But there is a Federal statute that allows testimony in this form for children under some circumstances, which has been upheld. Is that much is right? That is correct, Your Honor. 3509. The district court here, as I understand it, said he didn't think the statute applied to revocation, but let's suppose it does. What was why wasn't it complied with or wasn't it complied with? The statute was not complied with for three distinct reasons. First of all, the district court judge did not make the specific findings on the record that the statute itself requires. Well, I don't know about that. What is the finding? The child is unable to testify because of fear or because she would suffer emotional trauma, and it seems to me he went he was very specific about that. I mean, he didn't say, or at this, well, he essentially did say, you know, essentially are you suffering emotional trauma right this minute, and only if you are will I let you go into the other room. Well, have him go into the other room. So he, in essence, did, no? I don't think that implicit, what Your Honor has suggested, that the district court accepting the victim's answers when he asked, are you able to continue with the defendant present in the courtroom, that that is an implicit finding. And our cases, I apologize, discourse cases in Garcia and Quintero confirmed that the findings have to be specific. Such an implicit finding, just accepting an accuser's statement that she is unable to testify in the presence of the defendant, do not suffice. Furthermore, even assuming that is indeed a sufficient finding, it was clearly erroneous because the accuser actually was not in fear of the defendant. The district court first at least implicitly held so. After the in-camera hearing, after the conversation, after the accuser was subject to questioning, the district court itself decided that she will proceed with testifying in open court. And I would suggest that the transcript of the in-camera hearing makes it so plain that she had no fear. She was only able to even say that after the district court insisted that the previous reasons she had given him were not good enough. And when she finally alighted upon the fear statement, what the district court said, well, why are you in fear of the defendant? And she said, I don't know. Did he threaten you? No. Did he not? I'm just asking. But section 3509, you are expressly asking us to find that 3509 should apply in the revocation context, correct? And that therefore, the requirement of express findings be imposed? Your Honor, we believe that 3509 applies in revocation proceedings. I think that the statute on itself certainly sends, you know, contradictory messages, because on one side, it refers to all proceedings in which child witnesses are going to testify. But on the other side, it refers also to the jury, which obviously would suggest that it only addresses trials and not revocation proceedings. I would also point out that it was the government who suggested that the statute applies. It is for that reason that we are even having this fight about the statute. But yes, Your Honor. Can I slip in for a second? Of course. Mr. King is no longer in custody, is that correct? It is correct, Your Honor. Isn't there's a suggestion of mootness in this case? There is such a suggestion, Your Honor. And so could you tell me why we should not apply our case of United States v. Palomba, which specifically held that dismissing a case is moot, when the person is, the parole revocation is completed? So we've already held, haven't we, that after the parole revocation has been, or the revocation has been completed, that the case is moot? Yes, Your Honor. How are we even going to get to this case if it's moot? Yes, Your Honor. We are in a pretty difficult position here, given the Supreme Court's Spencer opinion and also our case file. Yes, you have a Supreme Court case, too. This Court's case, so I apologize. Yes. Well, the window, the Spencer case also in the Supreme Court is against you. So you do have a different, I want to get your view before I worry about the merits. I'd really like to, if I have anything to do. Yes, Your Honor. You are right to worry about that. Our position is that sex offenses are just different. Unlike any other category of offenses, sex offenses are stigmatizing in a way that nothing else is. But more importantly— I read that in your brief, your supplemental brief that you just filed, and thank you very much for doing that quickly. But that requires a good deal of speculation. And there's traditional mootnesses. You can't speculate about what might happen in the future. And there's no case that said sex offenses are different from that. Certainly, there are no cases. But I will say that also provides you an opportunity to decide in the first instance whether sex offenses should be treated differently. Was that brought up in the—that was never brought up before, and we have never had a case on it, have we? No. No, that's exactly my point, Your Honor, that I don't think Your Honors have been faced with a situation in which a sex— I don't know as—I have been unable to confirm whether right now, but let's assume he is not, because probably that's the correct assessment of at least the case law in—of the state of the law in California. I certainly do not know about the rest of the country. But my point, Your Honor, is that when it comes to sex offenses and when it comes to  if history, if our experience teaches us anything, is that at some point, probably sooner rather than later, those requirements will be extended to revocation proceedings. And I'm saying that because— And also, there's—there is the whole rest of the country. Yes. Yes. Yes. How does that assumption overcome the speculation concern that Judge Wallace raises? Because it is not—it is—it is a speculation informed by practice. Certainly, I agree with you that we cannot know for sure it's going to happen. But I will suggest it is very likely it's going to happen. It's just a matter of when. If we have— But you have—we don't have anything at all to say very likely it's going to happen. That's the problem with mootness. We have nothing in the record. Do you have a case that would say that we can speculate that sooner or later these sex offenses are going to make a difference to this individual? No case? No record? I do not have a case. What I have is the past 25 years of experiencing the dramatic expansion of sex offense registration laws. I understand. I understand. We all have our views. But when we get to say it's not moot because, we can't say a lawyer said that it's going to go on. We have to have something more stable because we would have to say why we can't follow Palumbo. We would have to distinguish Palumbo. And if you were writing the opinion, you'd say Palumbo is distinguished because I think in the future we're going to have sex problems. That can't hold up for an opinion, can it? Well, Your Honor, I understand that that would be new. I fully agree with you. But I would also say that as a society, as a nation, we have moved so far away from the initial requirements when only people convicted of sex offenses were subject to registration. We have moved from that. And right now we are already in a place where people who have never been convicted of sex offenses are subject to registration requirements upon findings by courts. By parole. And you're hanging your head on registration alone for collateral consequences? Your briefing references impact on relationship with children, but there's nothing more there to add. All of those are, I would say, collateral consequences to being a sex offender. But tied to registration. They are tied to registration. But you also mentioned a case that even comes close to saying that that theory could be adopted. Even close. What case would you rely on that we would say because of? I do not have. I have not. I have been unable to find a case close enough to what Your Honor's desire in the time that I had. Doesn't that indicate we're speculating here, which we can't do for mootness? But, again, Your Honor, I understand your point. I'm just saying that sex offenders are just. You're doing a great job. Yes. Thank you so much. I appreciate that. Your time is way up, but one more question. Yes. You also mentioned the possibility of some issue in a custody proceeding. Is there a custody proceeding? If there's a custody proceeding right now? Yes. You said that there might be a problem in a child custody proceeding. I'm just saying that at least in California, people who are subject to registration. Does he have children? Is he divorced? Is there a custody proceeding? He has children. I am not aware if he's in custody proceedings right now, but he certainly has children. Yes. He has children, but they're not in a custody proceeding. Not right now. I point out he just got out. I mean, hopefully he will not have custody proceedings soon. All right. Thank you a great deal for a very useful argument. Thank you. Good morning. May it please the Court. My name is Philip Kopczynski and I represent the United States. This case is moot, Your Honors, because Mr. King was released from custody in January and he is no longer on supervised release. If he were to re-I understand the case law probably doesn't support this, but if he were to re-offend and end up in a criminal proceeding again, you don't think this whole incident might have any impact on his sentence? It could. Does it seem pretty likely, actually? It could. It could, but in fact. Well, why isn't that a collateral consequence of the same kind that we concern ourselves with with regard to convictions? Well, because the Supreme Court said so in Spencer. That was exactly the facts of Spencer. Spencer, the findings of the court. Does it make any difference that that was parole and this is supervised release, which in this instance is part of the sentence and there are Federal guidelines which deal with the imposition of the sentence for violation of, in other words, it's a violation of the supervised release, which has its own sentence. It's not simply that it's filling out the earlier term and that he and that the Federal guidelines give effect to particular circumstances. Well, a couple of things. One, under the guidelines, this revocation wouldn't change anything for him in the future. He already received a conviction in 2011 for this case that would score the maximum number of criminal history points. So this would only be some sort of atmospheric consideration in a future sentencing proceeding. But again, the Supreme Court squarely. But judges pay attention to the atmosphere. I'm sorry. Judges pay attention to atmospheric conditions. And in fact, I mean, it's possible Mr. King could be back before Judge Alsop, who would be familiar with the full history here and the multiple revocations, the underlying conviction. It could all be in the mix, but the Supreme Court squarely rejected that. And in fact, in Spencer, that defendant, Spencer, had already reoffended. He was already back in the criminal justice system. So it wasn't even all that remote of a possibility that this prior parole finding that he had committed rape would factor in again for him in the future and hurt him in a future case, because he already had that case. The Supreme Court said still no, that does not amount to a concrete injury for Article III purposes. In a parole circumstance, though, all he is doing is being sent back to finish his previous sentence, right? Yes. And that's not true here. Yes, true. He gets a longer sentence. It's a separate sentence for a separate offense, basically.  The offense isn't the – my understanding of supervised release is that the offense is not the particular offense, but it's violating his – the terms of a supervised release. But it is a separate sentence, and it's not a sentence that's part of the earlier incarceration. And it's completely conditional, right? Conditional on him doing something that he's not supposed to do. Yes. And it's sometimes called by this Court a breach of the court's trust. It breaches the district court's trust. So what case law do we have saying that for all purposes, including the mootness determination, that supervised release is the same as parole? Including mootness? Some of the cases we cited in our brief have tracked Spencer, which was parole, into supervised release. There were more that we didn't cite, including some unpublished. And then, of course, more broadly, this Court frequently says, including in January when it held that the Fifth Amendment does not apply to supervised release revocation hearings, this Court noted that probation and supervised release are the same. Well, probation certainly isn't the same. There is no parole anymore in the Federal system. Oh, yeah. But I think the point is parole, supervised release, probation. No, but that's for purposes of the procedure. But this isn't a procedural question. I mean, except in a, you know, exactly. It's a question of what the consequences of a — how much we should be concerned about the consequences on the future, essentially. And I think the other thing we have to keep in mind here is the defendant has not met his burden of showing any concrete consequences. I just heard from my colleague that still now, with a couple of weeks since the Court's order — Well, suppose it turns out — let me ask you something. Suppose it turns out that he gets into a custody — I mean, frankly, the notion that the sex offense registration is going to be expanded to include this is far from far-fetched, and we don't actually know what's true in 49 other States. Maybe we need to find out. But the — because it is sometimes astonishing to me when we see cases what triggers the registration requirement. Do you have any idea whether this triggers a registration requirement in some place? So far as I know, it does not. And this Court doesn't need to investigate that.  But this is what I was asking. But it's the defendant's burden. Suppose next week, after we dismiss this case, California passes a statute requiring him to register, then what? Does he come back? No, of course not. And that's mootness. Mootness is a point in time. As we stand here or sit here today, is there a concrete injury before this Court that this Court could fix for him with a favorable ruling? And in a week or tomorrow, if things had changed, that still doesn't matter. Mootness is a point in time. It's right now. And right now, he's not identified any concrete injury that this Court can fix. I think one thing I want to point out is in Spencer, there was a circuit split before that, and the Supreme Court noted a case of this Court called Robbins v. Christensen. Robbins was a case where a prisoner had been disciplined based on a finding that he used illicit substances in prison. And he spent longer in prison because of that, and he petitioned for habeas. This Court found that there was a collateral consequence under Article 3 because his illicit drug use, that finding by the prison disciplinary authorities, could be used against him in the future in employment. And the Court reasoned that that's very plausible, that a future employer would care about drug use, and it noted some of the same things I'm hearing from the defense today about how drug use is an issue of the day, and it's increasingly of concern to employers, and there's drug testing. And this Court said, fine, that that is a collateral consequence that creates Article 3 standing. The Supreme Court overrules that in Spencer. That was part of the circuit split. The Supreme Court takes Spencer and goes the other way. So I think post-Spencer, with that history, it is abundantly clear that the sort of Can I just ask, let's just assume for sake of argument we do reach the merits. Of course, yes. On Section 3509, government points to 3509 in the trial court. Is it the government's position that if we reach the merits, the Court should say clearly 3509 applies in revocation proceedings? No, just the opposite, Your Honor. We brought up 3509. And no waiver below. What's that? No waiver below. Well, no, because we never said that it applied. We brought it up as a model for how to do this revocation hearing with a child victim. The Court could go look at the record. It is very clear that we never said it applies. And it is a model. It's a good model. Frankly, it's a more rigorous model because it's based on the Confrontation Clause. Marilyn v. Craig, a Confrontation Clause case, is the basis for 3509. So it's more rigorous. It gives the defendant more rights. And the district court followed it here, and it worked out well. But our position is it does not apply. It applies to criminal trials, and that's from the plain terms of the statute as well as that history, Marilyn v. Craig. What terms are you relying on? I couldn't hear the question. What terms are you relying on? Yes, of course. So first of all, it defines child as a victim of or witness to a crime. Now, supervised release. But that was true. I mean, that seems to me to fit here exactly. In other words, it might not be true in a child custody proceeding or something, but he was being the supervised release revocation was based on a new offense, right? Here, true. A crime. A crime. But generally speaking, setting aside here, revocation hearings. In this case, it was based on a crime. But I thought Judge Mueller's question was whether 3509 applies to revocation hearings generally. Well, this revocation hearing. This kind of revocation hearing in which the revocation is based on a crime. I don't we certainly wouldn't support that sort of selective application of 3509, depending on the nature of the revocation hearing or the charge at issue. And I think there are other parts of the statute that show that. So it talks about a jury. There's no juries ever in a revocation hearing. It talks about giving notice of using the procedure a week before trial. There is throughout 3509 language that is not consistent with probation revocation hearings. And again, Marilyn v. Craig is the other important piece of this. So if, for example, it was a judge trial, it wouldn't apply? A bench trial? A bench trial, yes. No, I believe it would apply at a bench trial. Right. So therefore, the reference to a juror can't mean very much. So what else? I think it's the sum of all those things as well as the history. This Court has previously said that 3509 was passed by Congress in reaction to Marilyn v. Craig. Marilyn v. Craig is a case about the Comfort and Compensation Clause and a criminal  trial. So I think that, combined with the terms of the statute, show it doesn't apply. But as we've said, frankly, even if you're going to do it, it doesn't apply. Kagan. I mean, the one piece that's pretty specific, well, here's one. Videotape deposition of child in a proceeding involving an alleged offense against a child. This is a proceeding involving an alleged offense against a child, right? I agree. That language is much broader. A proceeding could mean a lot of things. We think it's the other parts of the statute that help define what a proceeding is, and it's a criminal trial. But even if this Court says it applies, Judge Alsop clearly complied with it. There was an abundant record for him to find that this witness was in fear. She had actually previously described this rape in a forensic interview. So she had experience knowing what it feels like to try to talk about this as a 15-year-old from a troubled background. She knew how it made her feel. And so when she talks to Judge Alsop in Chambers after previously submitting a declaration and these months-long process of describing it, probation officer talks about it, then when she's in Chambers, she can tell Judge Alsop with some weight behind her statements. But it does say that she's supposed to support her inability to testify with findings on the record. Did he do that? I believe he did if the Court considers the whole record, including that in Chambers' section. I think when it finally got to the moment of allowing it, he didn't at that moment articulate everything that had happened before. But I think he obviously recognized that there was this incredible months-long record of this witness, this victim, saying that she could not talk about the details of her sexual intercourse with her assailant with him sitting there in the room. And then all that actually happens when she does that and the judge is satisfied is he goes into another room, still sees her through two-way television, talks to his attorney over a phone line. Well, my understanding of the part of the confrontation protection that's being relied on here isn't whether he sees her, it's whether she sees him. And she does see him. That's actually unlike Marilyn v. Craig. In Marilyn v. Craig, it's one way. The child doesn't have to look at the assailant. The Supreme Court said that's okay under the Confrontation Clause. Here it's both ways. They can see each other. A large, I think Judge Ossoff said it's like a 20-foot screen. So it's clear they could look at each other. Kagan. Why do you put screen? It's scary. Why do you think it seems too large? Anyway, your time is up. Yes, of course. We ask the Court to affirm. Thank you very much. Thank you. You ask the Court to affirm or dismiss? We ask the Court to find the case as moot. If the Court finds it is not moot, then we ask to affirm. Thank you very much. Thank you very much. Very helpful again. I'll give you two minutes. Thank you, Your Honor. I would like to make two points. As to Section 3509, assuming that 3509 applies in this kind of proceedings, certainly in Mr. King's proceedings. Is your position that it does or doesn't? It is our position that it does. Okay. And if it does, I would point out another way in which the procedure that this Court used that doesn't comply with this section. The fact that it was Mr. King who was removed from the courtroom and not the victim and not the accuser. And I would point that out because the statute itself clearly says that it is the child witness who needs to be removed. And I would suggest that's not a coincidence. It was designed that way to also preserve a defendant's right to be present. So that is not, I think, an insignificant deficiency in this procedure. I suppose also perhaps the child's, you know, presence in a serious place where she will need to be truthful, be impressed on her. Right. Yeah. And I would also, I would like to follow up with that. Even assuming that 3509 doesn't apply or it was complied with, Mr. King also had a due process right to confront face to face his accuser. And under this Court's committal balancing test, that right was clearly violated. So section 3509 is not dispositive of our confrontation claim because we also have the committal balancing test that reaches, that leads us to the same conclusion. And I would like to return. That was hearsay. Committal was addressing hearsay evidence. Well, when there is hearsay, both aspects of confrontation are actually involved, right, because that person is not available for face to face confrontation. It's also not available for cross-examination. So I. Do you agree with the government's characterization of the two-way TV? The large screen. I don't agree with the 20-foot TV monitor. I don't think we have something like that in our courtroom. But there was a two-way TV system. But as I mentioned in my opening argument, courts like the 8th Circuit in Bordeaux, 11th Circuit in Yates, have declined to find that that kind of remote confrontation is the equivalent of face to face confrontation. And I would like to finally return to Judge Wallace's concerns about mootness. I think that this is obviously a very complex issue. And I would respectfully request that if Your Honors are interested in this issue, to give both parties the opportunity to brief this properly. You already briefed it. We heard your briefs. I can do better, Your Honor. Three days to canvass the many laws of these 50 states. And pending bills. And to thoroughly do my research is just not enough, with all due respect. Okay. Thank you very much. Thank you both for a really first-rate argument on United States v. King. We will submit United States v. King and go to the last argued case of the day. Yousafi v. Credit One Financial. United States v. Gibson has been vacated because of the illness of one of the lawyers. And we will hear it later. Thank you. Thank you.
judges: Wallace, Berzon, Mueller